UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Chuck Booms, | ) |
| | ) Case No. 1:23-cv-02099-JPC |
| Plaintiff, | ) |
| | ) Judge J. Philip Calabrese |
| vs. | ) |
| | ) |
| Gray Local Media, Inc. et al., | ) |
| | ) |
| Defendants. | ) |

**Memorandum in Support of Gray's Motion for Summary Judgment**

**I.    Introduction**

To prove theft of publicity rights, plaintiff must prove that the defendant took or used plaintiff's name without permission.

Plaintiff Chuck Booms sues because his name appeared on an AT&T program description for *The Fifth Quarter* (a football-related television program that airs on Gray's Cleveland television stations). Although Booms used to appear on that program, he has not appeared since the 2016 NFL season. Booms, however, cannot dispute that Gray has no ownership or control of the AT&T cable service on which Booms' name appeared, and Booms has no evidence that Gray told AT&T (or any other cable or streaming provider) that Booms was on *The Fifth Quarter* after he was no longer on the program.

In the end, Booms has no evidence that Gray took or used Booms' name without permission. Thus, as a matter of law, Booms cannot recover against Gray for statutory or common law theft of publicity rights. The Court should grant summary judgment to Gray accordingly.

## II. Statement of Facts

### A. The Parties

Plaintiff Chuck Booms is an individual; he resides in Cuyahoga County, Ohio. (2d Am. Compl. ¶ 1, ECF 27 at PageID 167.) Booms used to appear on a television program called *The Fifth Quarter*, but that ended in 2016. (*Id.* ¶ 14, ECF 27 at PageID 169.) *The Fifth Quarter* airs after Cleveland Browns NFL football games to recap the game. (*Id.*)

Gray Local Media, Inc. is a Delaware company with a principal place of business in the state of Georgia. (*See* 2d Am. Compl. ¶ 2 (admitting Gray is a "foreign corporation"), ECF 27 at PageID 167; *see also* Notice of Removal ¶ 3, ECF 1 at PageID 1.) Gray owns two local television stations at issue: WOIO 19 and WUAB 43. (*See* 2d Am. Compl. ¶ 2, ECF 27 at PageID 167.) *The Fifth Quarter* has aired on both of those television stations.

### B. Booms' Allegations

Booms sues because he alleges that his name appeared without permission "from September 8, 2019 through January 7, 2024 on the channel guide of Defendants AT&T and/or DIRECTV." (2d Am. Compl. ¶ 18, ECF 27 at PageID 170-71.) Booms asserts two causes of action: (i) violation of Ohio's right of publicity statute, Ohio Rev. Code § 2741.021; and (ii) violation of Ohio's common-law right of publicity tort. (*Id.* ¶ 24, 30, ECF 27 at PageID 171-72.)

### C. Discovery confirms that Gray never violated Booms' publicity rights.

Discovery in this case began in January 2024. Evidence produced in discovery shows that Booms' name appeared with other individuals' names as part of a description of *The Fifth Quarter* program in a DVR listing on the AT&T cable service. (Booms Initial Disclosures,

12/28/23, Ex. C-1, ECF 35-2 at PageID 268.)[1] Booms has not been on *The Fifth Quarter* since 2016. (*See* 2d Am. Compl. ¶ 14, ECF 27 at PageID 169.) Booms' neighbors David and Kim Goodrich saw Booms' name and told him about it. (*See* Booms' Answer to Interrog. 6, 1/9/23, Ex. C-2, ECF 35-3 at PageID 276; *see* also Initial Discls., Ex. C-1, ECF 35-2 at PageID 268.) Below is a photograph produced by Booms that shows the description on which he sues.



(Ex. C-3, ECF 35-4 at PageID 281.)

It is undisputed that Gray has no ownership or control over the AT&T cable service on which Booms' name appeared. (*See* Booms' Resp. to Req. for Admission No. 5, 8/26/24,

---

[1] Booms' initial disclosures state that Booms' neighbor discovered Booms' name, and the photos of his name were obtained from the neighbor's AT&T cable service. As a result of a spinoff in 2021, DirecTV, LLC now owns the AT&T cable and streaming services at issue. (2d Am. Compl. ¶ 5, ECF 27 at PageID 167.) Prior to that spinoff, AT&T Inc. owned AT&T's cable and streaming services, including U-Verse, AT&T TV, and DirecTV.

Ex. C-4, ECF 35-5 at PageID 290.) Booms also has no evidence that Gray told AT&T that Booms was on *The Fifth Quarter* during a time when he was <u>not</u> on the program. (*See* Booms' Resp. to Request for Admission No. 3, 10/17/24, Ex. C-5, ECF 35-6 at PageID 294.) In discovery, Gray disclosed to Booms that it informs AT&T (through its designee "Red Bee Media") and other cable and streaming providers about upcoming television programming by sending a weekly programming email to providers. (*See* Gray's Resp. to Interrog. No. 7, 2/8/24, Ex. C-6, ECF 35-7 at PageID 301; *see also* Declaration of Lisa McManus ¶ 2-4, 9, ECF 36-1 at PageID 368-69.) That weekly email attaches Excel spreadsheets that contain program grids showing the dates, times, and titles of upcoming programs for the next three months. (*See* Gray's Resp. to Interrog. No. 7, 2/8/24, Ex. C-6, ECF 36-7 at PageID 301; *see also* McManus Decl. ¶ 2, ECF 36-1 at PageID 368.) Per AT&T's instructions, Gray sent the weekly programming email to Red Bee Media, formerly FYI Television, as AT&T's designee. (*See* McManus Decl. ¶ 9., ECF 36-1 at PageID 369.)

None of those emails and program grids identify any hosts or on-air personalities appearing on the programs, but instead only identify program titles. (McManus Decl. ¶ 3-4, ECF 36-1 at PageID 368.) None of those emails and program grids identify Booms as being on *The Fifth Quarter*, let alone at a time when he was <u>not</u> on the program. (*Id.* ¶ 10-12, 14-15, ECF 36-1 at PageID 369-71.)

4

34418116.1

    **D.**    **Booms issues subpoenas to third-parties, which further confirm that Gray never violated Booms' publicity rights.**

Booms issued deposition and document subpoenas to AT&T[2] and Ericsson (who owns Red Bee—the company from which AT&T obtains programming information). (*See* Cavanagh Decl. ¶ 12-13, Ex. C-7, ECF 35-8 at PageID 306-351.)

None of those companies produced any evidence showing that Gray told, suggested, or otherwise indicated to them that Booms on *The Fifth Quarter* when he was no longer on the program. (*See* Booms' Resp. to Req. for Admission No. 3, 10/17/24, Ex. C-5, ECF 35-6 at PageID 294.)

**III.**    **Law and Argument**

    **A.**    **Summary Judgment Standard**

Fed. Civ. R. 56 mandates summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. Civ. R. 56(a); *see also Metron Nutraceuticals, LLC v. Cook*, 683 F. Supp. 3d 684, 704–05 (N.D. Ohio 2023).

Summary judgment is proper when the opposing party fails to show the existence of an essential element for which that party bears the burden of proof at trial. *Pineda v. Hamilton County, Ohio*, 977 F.3d 483, 491 (6th Cir. 2020); *see also Duncan v. Lourdes Univ.*, No. 3:20-cv-2665-JGC, 2023 WL 5984163, at *5 (N.D. Ohio Sept. 14, 2023) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

---

[2] Although Booms issued his subpoena to AT&T, DirecTV, LLC responded to the subpoena because it now owns the AT&T cable service at issue. (*See* Ex. C-8, ECF 35-9 at PageID 353-359.)

34418116.1

As explained more below, the Court should grant summary judgment because Booms has no evidence that Gray took or used his name, which is an essential proof element for both causes of action.

### B. Booms has no evidence that Gray violated his publicity rights.

#### 1. Booms must prove that Gray took or used his name to prevail.

Under Ohio's right of publicity statute, "a person shall not <u>use</u> any aspect of an individual's personal for a commercial purpose" without permission. Ohio Rev. Code § 2741.02(A) (emphasis added). Thus, a defendant cannot be liable unless he actually "uses" plaintiff's name or other persona rights.

Similarly, under Booms' analogous common law claim, a defendant is not liable unless he "appropriates to his own use or benefit the name or likeness of another." *Zacchini v. Scripps-Howard Broadcasting Co.*, 47 Ohio St.2d 224, syllabus 1 (1976), *rev'd on other grounds,* 433 U.S. 562 (1977); *see also Vinci v. Am. Can Co.*, 69 Ohio App.3d 727, 728, 591 N.E.2d 793 (8th Dist. 1990).

To "appropriate" a plaintiff's likeness, under the common law cause of action, means to "take" it for defendant's own use or benefit. *See Zacchini*, 47 Ohio St.2d at 231 ("The determinative question is ... whether defendant's <u>taking and use</u> of the film of plaintiff's [human cannonball] act ... constituted the appropriation of the defendant's exclusive rights to his own likeness and identity") (emphasis added); *Seifer v. PHE, Inc.*, 196 F. Supp. 2d 622, 630 (S.D. Ohio 2002) ("In order to state a cause of action for invasion of privacy by misappropriation, the complaint must allege that plaintiff's name or likeness ... was <u>taken</u> by defendant for its own benefit") (emphasis added); *see also* APPROPRIATION, Black's Law

Dictionary (12th ed. 2024) ("*Torts*. An invasion of privacy whereby one person <u>takes</u> the name or likeness of another for commercial gain.") (emphasis added).

Thus, a plaintiff cannot recover under right of publicity laws—statutory or common law—against a defendant who did not <u>take</u> or <u>use</u> plaintiff's name or likeness. *See Cross v. Facebook, Inc.*, 14 Cal.App.5th 190, 208-210, 45 Media L. Rep. 2552 (Cal. App. 2017) (dismissing statutory and common law publicity claims because contested use of plaintiff's name was by third-parties and not by Facebook, despite Facebook allegedly benefiting from the use).[3] Nor can a plaintiff recover against a defendant based on a third-party's use of plaintiff's name or likeness. *Id.*

### 2. Booms cannot show that Gray took or used his name.

The only evidence of use of his name that Booms has identified is a description of *The Fifth Quarter* on the AT&T cable service. (*See* Booms' Resp. to Req. for Admission No. 1, 5/23/24, Ex. C-9, ECF 35-10 at PageID 363-64.) Again, Booms has no evidence that Gray owns, controls, or is otherwise responsible for AT&T's service platform. (*See* Booms' Resp. to Req. for Admission No. 5, 8/26/24, Ex. C-4, ECF 35-5 at PageID 290.) Nor does he have any evidence that Gray told AT&T that Booms was on *The Fifth Quarter* when he was not on that program. (Booms' Resp. to Req. for Admission No. 3, 10/17/24, Ex. C-5, ECF 35-6 at PageID 294.) Because Booms has no evidence that <u>Gray</u> took or used his name without permission, he cannot recover for statutory or common law misappropriation of publicity rights against

---

[3] Although the *Cross* decision is by a California court of appeals, Ohio courts rely on out-of-state rulings in the right of publicity area because "case law on the right of publicity is exceedingly rare and due to the interest of maintaining nationwide uniformity of this rights." *Wilson v. Ancestry.com LLC*, 653 F. Supp. 3d 441, 454 (S.D. Ohio 2023); *accord James v. Bob Ross Buick, Inc.*, 167 Ohio App. 3d 338, 344 (2d Dist. 2006) (relying on other states' right of publicity decisions because "there is a paucity of precedent in Ohio regarding the application of this tort").

Gray. The Court should grant summary judgment to Gray on both right of publicity claims that Booms asserts.

Booms' only liability theory against Gray is incorrect and legally unsupported. He posits that, by identifying generally in the past that Booms was on *The Fifth Quarter* when he actually was on the program, Gray should have told cable and streaming providers when Booms was not on the program. Setting aside that it would be an impossible task to track and inform cable and streaming providers about who is <u>not</u> appearing each week on the hundreds of programs that air on WOIO and WUAB weekly, Booms has no legal authority to support his theory.

### IV.     <u>Conclusion</u>

The Court should grant summary judgment to Gray and dismiss it from this action with prejudice.

Respectfully submitted,

Dated:   November 6, 2024

   s/ Matthew J. Cavanagh   
Matthew J. Cavanagh (OH 0079522)
MCDONALD HOPKINS LLC
600 Superior Avenue, East, Ste. 2100
Cleveland, Ohio 44114
mcavanagh@mcdonaldhopkins.com
t 216.348.5400 │ f 216.348.5474

*Attorney for Gray Local Media, Inc.*

**Certificate of Compliance with L.R. 7.1(f)**

     I hereby certify that this case is on standard track and adheres to the page limitations set forth in L.R. 7.1(f) of 20 pages.

                                  s/ Matthew J. Cavanagh
                                  *Counsel for Defendant Gray Local Media, Inc.*